Mr. Mann. May it please the court. My name is Chris Mann and my co-counsel, Ian McClatchy, and I represent the appellants in this case. I'd appreciate being able to reserve two minutes for rebuttal. Yes, you may have them. Thank you, Chief Judge. The service members and their spouses are prevailing parties in this litigation, and as such there's a presumption that they are entitled to attorney's fees under the Equal Access to Justice Act. Unless the government can prove, it can meet its burden of proving that its conduct that both led to the litigation and its conduct during the litigation itself was substantially justified. And here the government cannot meet that burden on either ground. The Supreme Court in Pierce v. Underwood explained that the test for determining whether the government was substantially justified is, quote, whether urging the opposite merits determination was substantially justified. As we noted in our brief, in numerous briefs that the government itself has filed, they've explained that this requires an inquiry into the actual merits of its litigating position and whether there is, quote, a fair possibility of success, end quote. And here there was no such possibility. The government, by admission, knowingly and purposefully violated the constitutional rights of my clients and it never sought to defend that conduct. All right. The Windsor case ultimately resolves this. Until the Windsor case resolves the issue on the merits, how can you say the government didn't have a substantial justification for defending this case? Well, the Equal Access to Justice Act, Your Honor, requires you to look at the litigating position of the United States. And I understand your argument to be that once the President decided he did not want to enforce DOMA and would not defend it in court, that that is what makes this substantially unjustified? It is since, Your Honor, but what the government's position was, their litigating position is what you evaluate. And their position was that the law is unconstitutional, but I'm going to violate the rights of these people anyway. And that's a problem. But that's up to the court whether the law is unconstitutional or not. Just because the executive branch, in opposition, I will say, to many members of Congress, makes a decision does not mean that the case is resolved. Well, the issue is really the litigating position of the United States. Had the government taken the position, I guess Chief Judge Lynch, the problem is the government is now relying on a position in this case that it did not take. It is true that it was a 5-4 decision in Windsor and that it was an actively disputed case, but it was not disputed by the government. It was the government's litigating position that was not substantially justified. We've got a rather unusual case here, to say the least. And the case law doesn't deal with cases like this. Isn't it really artificial to say that the President's position was that the law is unconstitutional, period? When the President took the position, he believed the law was unconstitutional, but he did believe the matter should be submitted to the courts to be determined. Now, that, it seems to me, is the position of the United States when they came to court as a practical matter. I think, aren't you drawing a very artificial distinction in saying their position on the constitutionality of the statute can be divorced from the presidential respect for the prerogatives of the other branches? Well, Your Honor, I think that's a situation that arises in almost every constitutional violation. What the purpose of the Equal Access to Justice Act is, is to deter constitutional violations. They want the executive branch to think twice before it takes unconstitutional actions. And when the President of the United States concludes that its conduct is unconstitutional, he should stop. It shouldn't happen. And the President has that authority. The same way a police officer that's thinking, should I use an unlawful use of force or not? You want the police officer not to shoot first. There are plenty of times when the executive indulges in the presumption of constitutionality of statutes enacted by the legislature and defends them in court, even if, as an original matter, the executive might be somewhat uneasy about the statute. Are we going to say that in those situations the executive is unreasonable? Well, Your Honor, I think what you do is you accept what the executive branch says at face value. And here, Attorney General Holder's letter of February 23, 2011 to Congress slays out the DOJ position, which has always been, he says it's a law-abstaining practice, if any reasonable argument can be made in defense of the constitutionality of a statute, the Department's policy is to make that argument. But the President and the Attorney General, the President here happens to be a constitutional law expert, concluded that there was no reasonable argument. That was the government's position. Now, maybe four members of the Supreme Court thought they were wrong. Maybe they thought there was a strong argument that could be made on the other side. Well, you also had a situation here where you were dealing with a very, it was terra incognita, as the Chief Judge has just pointed out there, in terms of the law, where the Congress of the United States recently had enacted a statute and had recently made a determination, therefore, that the statute was constitutional. Isn't the President in those circumstances entitled to show respect for the decision of the other branch and say, I will, despite my personal reservations, I believe that the integrity of the process requires that this be litigated, submitted to the court for decision, and that's what I'm going to do. Is that unreasonable? I believe it's a policy that the government could take as a matter of practice. If the government wants to pursue that strategy, it may, but it has to pay. That's the process with the Equal Access to Justice Act. They depend upon litigation. You've defined the term government in the Equal Access to Justice Act as turning on a decision by the executive. Judge Ripple has rightly taken you up on what that decision actually was. But do you seriously think Congress intended to add to the power of the President in this situation when Congress was on the other side of the issue? This is a unique factual pattern, Your Honor. Indeed it is, but I don't see why we are required to give the deference to the executive and look only at their position when the act refers to the government. Well, I mean, the executive branch is what takes the action that leads to the litigation on the agency side, and they're what takes the position, and the Department of Justice alone represents the United States in litigation before the court. That's what the Equal Access to Justice Act is. I see. So suppose General Holder had taken this position and the President had decided to stay out of it. I mean, these were political choices that were made. Well, if they had made that choice, then we would have had the same case. We still would have applied for our benefits. We would have sued when we hadn't gotten them, and if they had sat on the sidelines, I think you would have the same situation. Essentially, you'd have the government not defending a case versus what the government actually did here, which is say we should lose this case. But it is important, and it's not completely incognito. It happens all the time that the presidents are faced with situations where they have an unconstitutional law, and the normal response is not to enforce it. President Obama has refused to enforce laws without taking them to court. Numerous presidents have issued signing statements. You have reserved two minutes. Thank you, Your Honor. Thank you. Good morning. May it please the Court. Jeff Sandberg for the United States. The District Court did not abuse its discretion in denying the request for attorney's fees in this case, and the conduct by the President, which is challenged by plaintiffs here, was an act of fidelity to our constitutional structure. The sole reason that the agencies denied plaintiffs' claim for benefits here was because a duly enacted law, still on the books, not clearly unconstitutional under then-governing law, indisputably foreclosed the relief that plaintiffs were seeking. It sounds as though you'd like this case to be decided on the terra incognita ground. Your argument just suggests that if the law is clear and the President declines to enforce it, that they're entitled to fees. I think that's right, Your Honor. This Court has recognized that the government, when adhering to the dictates of Congress, can be found to lack substantial justification only when No, I didn't say that. I said when the President decides he's not going to enforce the law and there is some basis for that decision. Certainly the President has a range of options available to him when he reasonably believes that a statute is in conflict with the Constitution. And we certainly believe here that the President was substantially justified in taking the tact that he took because it paid appropriate respect to the Congress that had enacted the law and believed it to be constitutional and appropriate respect for the role of the courts as the final arbiter of the constitutionality of federal law. What plaintiffs are arguing here is that it is unreasonable for the President to do anything other than unilaterally nullify a statute without providing an opportunity to the courts to review the question. And plaintiffs are quite right that it is an extraordinary act by the President to decline to defend a law. What the President did here was he was put in a very difficult position. There was litigation filed in the Second Circuit in which for the very first time the Executive Branch was going to be required to take a view on the appropriate level of scrutiny to be applied to classifications based on sexual orientation. And what the President determined was that operating from the principles set down by the Supreme Court about tiers of scrutiny, that classifications based on sexual orientation should be subject to heightened scrutiny and under that standard no reasonable arguments could be made in defense of the law. Of course, at the time that the President made this determination, no court had yet adopted or applied these principles of heightened scrutiny to classifications based on sexual orientation. To the contrary, every court that had considered the question had applied rational basis review. Several courts have since adopted heightened scrutiny, but at the time that the President acted, the President realized that he was employing a novel doctrinal analysis. And it certainly maintained the equilibrium of our constitutional system of government for the President to take action to continue to enforce the law until the courts had clearly signaled that he should do otherwise. I'd be happy to entertain any further questions that the Court may have. Basically, you look at this as a matter of prosecutorial discretion. The President had options here, and he exercised one within the permissible range of the prerogatives of his office. That's right. And I believe that the President was substantially justified in the choice that he made. A small chiding to both counsel. We do have an en banc case in this circuit called Aronoff, which neither of you bothered to cite in setting forth the law. You, in fact, relied on some older cases. So just do your homework. All right? Thank you, Your Honor. If there are no further questions, the government would ask that the judgment be affirmed. All right. Your Honor, I think we've gotten lost a little bit. And the Equal Access to Justice Act is not just about paying respect to the branches of the courts, but it's about paying respect to the citizens themselves. There's nothing inconsistent with the government's litigation strategy of saying, I believe the act is unconstitutional. I'm going to enforce the act and violate your constitutional rights, believing we should get this act into a court. But that approach requires there to be a litigant on the other side. It requires there be people like the plaintiffs in this case that will come forward. And the reason the Equal Access to Justice Act was enacted was because Congress represented the little guy who doesn't always have the resources to fight. And there's numerous cases, including the Sierra Club case from this court and Judge Ripple's opinion for the Seventh Circuit and Phil Mint and Sons, that talks about when the government acts knowingly or believing that their conduct is unconstitutional, that takes away the good faith basis for there being a substantial justification. The government's strategy here depends upon litigants being able to fight. And the reason all the litigants in this case and all the various DOMA cases are here is because you have the state of Massachusetts that stood up for the little guy. You have public interest firms. You have firms like our firm that gave the work pro bono. But the little guy should not have to depend on that. They're entitled to have their fees paid for by the government when the government believes that their rights are being violated. So I have to take issue with it. Yes, that's certainly your core argument, and there's something to it. Thank you, Your Honor. Thank you.